UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:

AIDS HEALTHCARE FOUNDATION, INC.

    Plaintiff,

v.

CITY OF FORT LAUDERDALE, Florida,
A municipal corporation,

    Defendant.
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff AIDS Healthcare Foundation, Inc. ("AHF") hereby brings this action against Defendant City of Fort Lauderdale, Florida.

1. This is a complaint for declaratory and injunctive relief and damages against the explicitly discriminatory policies and practices of the City of Fort Lauderdale, Florida (the "City"), which violate the constitutional and statutory rights of Plaintiff AIDS Healthcare Foundation ("AHF"), a nonprofit organization, and the anticipated residents of a 500-unit apartment building AHF has proposed to build on its property at 409 S.E. 8th Street in Fort Lauderdale, Florida. The City has expressly and unabashedly rejected AHF's site plan application for the proposed apartment building based upon its belief that the apartments will serve "the homeless," the "chronically ill," and "AIDS patients." The City's overt discrimination against AHF on the basis of the perceived disabilities of its residents is a clear violation of federal law.

### Jurisdictional Allegations

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

3. This Court has personal jurisdiction over the City, as it is located in this District, and the statutory violations alleged herein occurred in this District.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, or a substantial part of the property that is the subject of the action is situated in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Defendant resides in this District.

**Factual Allegations**

5. AHF is a nonprofit corporation of international scope, providing medical treatment, counseling and preventive programs to more than one million people in 43 countries.

6. AHF has numerous locations throughout the United States, including a southern regional office located at 700 S.E. 3rd Ave. in Fort Lauderdale.

7. The City is a municipal corporation existing under the laws of the State of Florida.

**AHF's Public Mission**

8. While AHF was originally founded as an organization devoted to the treatment and prevention of HIV/AIDS, over the years it has broadened its mission to address numerous public health issues, from the Ebola crisis in the Democratic Republic of Congo to disaster relief in the Bahamas and Haiti.

9. AHF's Fort Lauderdale location includes a pharmacy and a Wellness Center that provides diagnostic assessments and preventative testing for HIV/AIDS and other sexually transmitted diseases to residents from throughout Broward County under a contract with the Broward County Health Department.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

10.     AHF has also expanded its portfolio to address the affordable housing crisis – as a lack of affordable housing frequently creates conditions that increase public health risks. As part of this "Healthy Housing Foundation" initiative, AHF has proposed to build a new, 500-unit apartment building to provide low-income, workforce housing on property it owns in downtown Fort Lauderdale.

**AHF's Site Plan Application**

11.     On May 24, 2019, AHF submitted a site plan application (Development Application No. R19041) to the City of Fort Lauderdale seeking approval of its proposed development of its property located at 409 S.E. 8th Street (the "Site"). *See* Exhibit A, attached hereto. In the application, AHF proposed to build a 500-unit apartment building, a parking garage, retail space, and a fire-rescue station.

12.     The apartment building is intended to provide affordable housing to low-income workers in Broward County. To ensure affordability, the residences shall be limited to applicants with household incomes that do not exceed 50 percent of the Area Median Income, or AMI. The residences will otherwise be available to the general public, without favor to any specific group or population.

13.     AHF does not intend to provide any specific social or medical services for the residents of the apartment building, and the building will not include any facilities to accommodate any special services, as the site plan application confirms. Nor does AHF intend to provide specific services for the apartment residents at its existing facility at 700 S.E. 3rd Ave.

14.     The development project described in Development Application No. R19041 is the result of AHF's repeated consultation with City of Fort Lauderdale staff over several months, after AHF submitted a previous site plan application in 2018. In that original site plan application,

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Development Application No. R18069, AHF proposed to build a larger apartment building with 680 units at the Site. *See* Exhibit B. The original application did not include a fire-rescue station or a retail component.

15. However, in response to concerns raised by both City staff and nearby residents during the design review process, AHF made multiple changes to the design and scope of the proposed project. For instance, AHF agreed to reduce the height of a section of the proposed apartment building from 15 stories to four stories – despite the fact that the zoning code allows for up to 30 floors – a change which lowered the density of the project from 680 to 500 units (a reduction of 26 percent). AHF also made other design changes requested by the City, including changing the proposed location for the main entrance of the apartment building. Similarly, in response to the City's concerns, AHF agreed to include a fire-rescue station as part of the project – at an additional cost of $5 million.

16. The focus of the affordable housing component of the project also changed with the revised application. When AHF first proposed to develop the apartment building in 2018, the project aimed to reduce the homeless population around downtown Fort Lauderdale, in response to City officials who identified the downtown homeless problem as an urgent issue at the time. However, by May 2019, City officials had adopted other plans aimed at addressing the City's homeless problem. Accordingly, with the City's encouragement, AHF proposed in Development Application No. R19041 to provide affordable workforce housing, using AMI as a benchmark.

17. With the City's approval and encouragement, AHF withdrew Development Application No. R18069 in May 2019 and submitted Development Application No. R19041 to reflect the City-approved changes to the proposed development project.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

18. When it submitted its original site plan application for the apartment building, AHF also submitted a separate site plan to build a parking garage and make other alterations to AHF's existing facility at 700 S.E. 3rd Ave. But because of the revisions to the proposed apartment project – reducing the number of units while adding a fire-rescue station and a parking garage on that site – AHF also withdrew its development application for 700 S.E. 3rd Ave. before submitting its revised application for the apartment project on May 24, 2019.

19. After advising and encouraging AHF to change the scope and character of its proposed development project, and further advising AHF to withdraw its original applications and submit the revised Development Application No. R19041, the City then bowed to public pressure from affluent neighbors who opposed the development, and subjected AHF's Development Application to unreasonable and groundless scrutiny – scrutiny that no commercial developer would face – in an effort to manufacture a legally justifiable basis to prevent AHF from developing the apartment building. Ultimately, the City devised a pretextual scheme to deny AHF's Application – with the secret assistance of AHF's opponents – by declaring that the proposed apartment building met the criteria for a Level V Social Services Residential Facility ("SSRF") under the City's Unified Land Development Regulations ("ULDR"). A Level V SSRF is not a permitted use in the zoning district where the Site is located.

20. On June 25, 2019, the City's Development Review Committee ("DRC") issued its Comment Report on AHF's Development Application No. R19041. In its Comment Report, no member of the DRC raised any questions or issues regarding the proposed use of the property. Nor did the DRC indicate or even suggest that the proposed apartment building met the criteria of an SSRF under the City's ULDR. Indeed, during the review process, City staff recognized the proposal as an "affordable housing project" and further noted that the development "may be

allocated affordable units from the Downtown RAC [Regional Activity Center]" zoning district. *See* Exhibit C. The reason is obvious: The apartment building proposed by AHF is indisputably a permitted use under the zoning code.

21. Nevertheless, AHF faced opposition to its development from some segments of the community, including the Villa Tuscany Homeowners' Association ("Villa Tuscany").

22. In July 2019, Villa Tuscany sent a letter to the City formally objecting to AHF's Development Application, and commissioned a so-called "expert report" which it then submitted to the City. In this report, Villa Tuscany's paid witness, Cecilia Ward, proclaimed that AHF's proposed apartment building somehow met the criteria for a Level V SSRF under the City's ULDR.

23. The City's Code defines an SSRF as a facility "intended to serve as a place for persons seeking habilitation, rehabilitation or recovery from any physical, mental, emotional or legal infirmity, or any combination thereof, in a family setting as part of a group habilitation, rehabilitation or recovery program utilizing counseling, self-help or other treatment or assistance." ULDR Sec. 47-18.32(A). However, expressly excluded from the definition of an SSRF are "apartments which are residences that offer living accommodations to the general public and serve no special group, nor offer special or personal services." ULDR Sec. 47-18.32(B).

24. Ward's conclusion that AHF's apartment project constituted an SSRF was ostensibly based on the unfounded assumption that AHF would be providing services to the residents of the apartment building – despite the fact that AHF never said or even suggested in its Application that it would be providing any services to any apartment residents. Ward simply assumed, incorrectly, that AHF would be providing services to the residents based on her review

of AHF's website and news articles which describe other affordable housing projects the organization has developed *in California*. After scouring the Internet for self-serving information that seemingly buttressed her false assumption, Ward proclaimed, with no factual basis, that AHF would "offer priority placement to individuals living with chronic health conditions, including HIV/AIDS," as AHF has done in some of its California programs. *See* Exhibit D (the "Ward Report") attached.

25. Ward further assumed that AHF planned to provide services to the apartment residents because "AHF has not gone on record that the proposed 'apartments' are 'residences that offer living accommodations to the general public and serve no special group, nor offer special or personal services' to its residents." *See* Exhibit D. However, the ULDR does not require AHF or any other applicant to "go on record" about the uses it is *not* proposing in a development application. As should be obvious, **AHF's application contained no discussion of AHF's services because AHF is not providing services to the apartment residents, or giving priority to applicants with HIV/AIDS.**

26. Significantly, the City did not inform AHF that it had received the Ward Report from Villa Tuscany.

**The City's Application Review Process**

27. Throughout the summer of 2019, the City's DRC continued its review of AHF's Development Application. By September 2019, nearly all of the members of the DRC had indicated their approval of the Application. However, opposition to the project from certain residents and neighborhood groups continued to increase.

28. On September 16, 2019, the City's Zoning Administrator sent an email to the City Attorney requesting a "legal opinion" on the Ward Report. *See* Exhibit E, attached.

29.     Four days later, on September 20, the City Attorney issued a memo that in large part parroted the unfounded assumptions and conclusions of Villa Tuscany's paid expert, Cecilia Ward.  *See* Exhibit F (the "City Attorney Memo"), attached.  In this Memo, the City Attorney asserted without any evidence that AHF's apartment building is intended to serve "the homeless, recent homeless, and chronically ill."  The City Attorney also claimed, again without evidence, that AHF intended to provide not only its own services to these residents, but also "other on-site wrap-around services provided by AHF's community partners" – which include the Urban League of Broward County and Mount Olive Development Corporation, nonprofits well-known for their work in the African-American community.  *See* Exhibit F.

30.     Like Ms. Ward, the City Attorney suggested in his Memo that AHF "will offer priority placement to individuals living with chronic health conditions, including HIV/AIDS." Exhibit F.  And like Ms. Ward, the City Attorney drew on AHF's website as the basis for this false assumption.  Based on these false assumptions, the City Attorney concluded that the apartment building proposed by AHF met the criteria for a Level V SSRF, and therefore was not a permitted use at the Site under the City's zoning regulations – adopting Ms. Ward's legal and factual conclusions wholesale.

31.     In coming to this conclusion, the City Attorney willfully disregarded AHF's pending Development Application, which unambiguously states that the proposed use of the Site is an apartment building – and only an apartment building.

32.     Significantly, the City Attorney *never referenced* or discussed the Ward Report in his Memo, thereby *concealing* from AHF the fact that opponents of the project were allowed to improperly influence the City's decision.

33. On September 23, 2019, the Zoning Administrator adopted the City Attorney Memo in its entirety and determined that "the proposed use of the subject site is in fact a Social Services Residential Facility (SSRF) Level V," and was therefore not a permitted use – despite the lack of any services for the apartment residents. *See* Exhibit G, attached. Accordingly, the Zoning Administrator found that AHF's Development Application "cannot move forward."

34. Like the City Attorney, the Zoning Administrator also willfully disregarded AHF's Development Application and the proposed use of the Site as an apartment building in rendering this decision.

35. The memos of the City Attorney and the Zoning Administrator conclusively demonstrate that the City's decision to deny AHF's Development Application for the apartment building were based entirely upon the City's perception that the apartment building would house people with HIV/AIDS and/or the "chronically ill."

36. Neither the Zoning Administrator nor the City Attorney had any factual basis for their false assumptions about AHF and its "intent" for the apartment project, or their allegations that AHF would be providing services to the apartment residences. These false and unfounded allegations demonstrate that the City's determination that AHF's apartment project met the criteria of an SSRF was merely pretextual, and in fact the City's decision was based on the City's fear of and prejudice against AHF, its clients, and those of AHF's "community partners."

37. On October 16, 2019, AHF appealed the Zoning Administrator's decision to the City's Board of Adjustment. *See* Exhibit H, attached.

38. In response, the City issued a Staff Report in which the City reiterated its position that AHF's proposed apartment building "is essentially an expansion of its existing social services facilities to provide housing for the homeless and the other clientele it serves" – that is,

people with HIV/AIDS. *See* Exhibit I, attached. As before, the City based this false assumption on its impression of AHF's "national business model" as gleaned from AHF's website, and again repeated the false suggestion that the proposed apartment building "will offer priority placement to individuals living with chronic health conditions, including HIV/AIDS."

**The Board of Adjustment Hearing**

39. The City's prejudice against AHF, its clients and its community partners was fully revealed at the hearing on AHF's appeal before the Board of Adjustment on January 8, 2020.

40. At the hearing, the City's Special C, unambiguously confirmed that the City's refusal to approve AHF's proposed apartment building was based entirely on the City's unwavering belief that the residents of the apartment building will be people with HIV/AIDS – despite the unrebutted evidence to the contrary presented by AHF at the hearing.

41. For instance, at the hearing, the Special Counsel simply declared, without evidence, that the residents of the proposed apartment building would be clients of AHF's nearby Wellness Center. As he proclaimed: "There have been long-term AIDS patients at the Wellness Center, some apparently as long as five years, in need of housing. **And those are the people that are anticipated to be the tenants in the residential facility to make it easy for them to get the treatment in the adjoining building."** *See* Exhibit J, Jan. 8, 2020, Hr'g Tr., at 103:1-6. The Special Counsel cited no evidence to support this bald assumption – because none exists. In fact, AHF's Southern Bureau Chief, Michael Kahane, testified that the apartments would be available to the general public, with no preference afforded to AHF clients.

42. Nevertheless, despite all evidence to the contrary, the Special Counsel repeatedly argued that AHF is "**trying to get people who you're treating for their AIDS and…trying to get them convenient housing,**" Ex. J at 105:4-6, and continued throughout the hearing to insist

10

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

that AHF planned to give preference in selecting residents for its apartments to "*those people* that they're treating, their clients, their patients that they're treating for AIDS." Ex. J at 111:6-10.

43. The Special Counsel's comments conclusively demonstrate that the City's determination that AHF's apartment project is an SSRF was pretextual, and that the City's denial of AHF's Development Application was a result of the City's fear of and prejudice against AHF, its clients, and those of AHF's "community partners."

44. Indeed, the Special Counsel's statements at the hearing about AHF and its clients were so offensive that members of the Board of Adjustment had to apologize to the public for his statements.

45. Under the provisions of the City Code governing Board of Adjustment appeals, the Zoning Administrator's decision could only be overturned upon a showing that it was clearly erroneous. In addition, the Zoning Administrator's decision could only be overturned by a vote of a supermajority of the Board. Ultimately, AHF's appeal failed by a 4-3 vote of the Board.

46. Upon the entry of the Board of Adjustment's Final Order denying its appeal, AHF had exhausted all administrative remedies with the City.

47. All conditions precedent to bringing these claims have occurred, been satisfied or otherwise have been waived or excused.

48. AHF has been forced to retain undersigned counsel to bring this action, and has incurred attorneys' fees and costs.

**Count I – Violation of the Fair Housing Act**
**(42 U.S.C. § 3601 et seq.) ("FHA")**

49. AHF incorporates the allegations from paragraph 1 to 48 as if set forth in full herein.

50. The City has stated and determined that AHF is seeking to house low-income persons suffering from HIV/AIDS or other chronic illnesses in the proposed apartment building at 409 S.E. 8th Street as described in Development Application No. R19041.

51. Persons who are perceived to suffer from HIV/AIDS or other chronic illnesses are protected individuals under the FHA.

52. AHF seeks to serve such low-income persons, deemed by the City to be suffering from HIV/AIDS or other chronic illnesses.

53. The City has rejected AHF's Development Application No. R19041 based substantially on the determination that the residents of the proposed apartment building would be suffering from HIV/AIDS, or are otherwise "chronically ill."

54. The status of AHF as an organization serving people suffering from HIV/AIDS, or who are otherwise "chronically ill," and the perceived status of AHF's proposed apartment building as a residence for people suffering from HIV/AIDS or who are otherwise "chronically ill," were motivating factors behind the City's decision to classify the apartment building as an SSRF and reject AHF's site plan application.

55. The rejection of AHF's proposed apartment building by the City was discriminatory and based on the City's animus to AHF and the residents of the apartment building based on their perceived disabilities.

56. This disparate treatment of persons perceived to be suffering from HIV/AIDS is forbidden by the FHA.

57. The denial of opportunities to obtain dwellings is ongoing and constitutes irreparable harm.

58. The City's conduct is intentional or grossly reckless in discriminating against the prospective residents of the apartment building proposed for the Site.

WHEREFORE, AHF demands temporary and permanent injunctive relief, a declaration that the City's conduct violates the FHA, monetary damages, punitive damages, civil penalties, attorneys' fees, costs and such other relief as the Court deems just and proper.

**Count II – Violation of the Americans with Disabilities Act
(42 U.S.C. § 12101 et seq.) ("ADA")**

59. AHF incorporates the allegations from paragraph 1 to 48 as if set forth in full herein.

60. The City has stated and determined that AHF is seeking to house low-income persons suffering from HIV/AIDS or other chronic illnesses in the proposed apartment building at 409 S.E. 8th Street as described in Development Application No. R19041.

61. The City has rejected AHF's Development Application No. R19041 based substantially on the determination that the residents of the proposed apartment building would be suffering from HIV/AIDS, or are otherwise "chronically ill."

62. The status of AHF as an organization serving people suffering from HIV/AIDS, or who are otherwise "chronically ill," and the perceived status of AHF's proposed apartment building as a residence for people suffering from HIV/AIDS, or who are otherwise "chronically ill," were motivating factors behind the City's decision to classify the apartment building as an SSRF and reject AHF's site plan application.

63. The rejection of AHF's proposed apartment building by the City was discriminatory and based on the City's animus to AHF and the residents of the apartment building based on their perceived disabilities.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

64. This disparate treatment of persons perceived to be suffering from HIV or AIDS is forbidden by the ADA.

65. The denial of opportunities to obtain dwellings is ongoing and constitutes irreparable harm.

66. The City's conduct is intentional or grossly reckless in discriminating against the prospective residents of the apartment building proposed for the Site.

WHEREFORE, AHF demands temporary and permanent injunctive relief, a declaration that the City's conduct violates the ADA, monetary damages, punitive damages, civil penalties, attorneys' fees, costs and such other relief as the Court deems just and proper.

### Jury Demand

AHF demands trial by jury for all issues so triable.

Respectfully submitted,

By: /s/ *Kendall Coffey*
Kendall B. Coffey, Esq.
Florida Bar No. 259861
kcoffey@coffeyburlington.com
Scott A. Hiaasen, Esq.
Florida Bar No. 103318
shiaasen@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

*Counsel for Plaintiff AIDS Healthcare Foundation, Inc.*